Filed 1/18/22  P. v. Romero-Luna CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B311736 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA054111-01) |
| v. | |
| SAUL ROMERO-LUNA, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County.  Michael V. Jesic, Judge.  Reversed and remanded with directions.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior

Assistant Attorney General, Kristen J. Inberg and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Saul Romero-Luna was convicted in 2008 following a jury trial of three counts of attempted willful, deliberate and premeditated murder (Pen. Code, §§ 187, subd. (a), 664)[1] and one count of shooting at an occupied vehicle (§ 246) with true findings on criminal street gang (§ 186.22, subd. (b)(1)(C)) and firearm enhancement allegations (§ 12022.53, subds. (b), (c) & (e)).  On March 3, 2021 the superior court summarily denied Romero-Luna's petition for resentencing under section 1170.95, ruling Romero-Luna was ineligible for relief because he had been convicted of attempted murder, not murder.

While Romero-Luna's appeal was pending, the Legislature enacted Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2) (Senate Bill 775), effective January 1, 2022, which amended section 1170.95 to expressly include within its reach certain convictions for attempted murder and voluntary manslaughter.  In light of this new legislation, we remand Romero-Luna's case for the superior court to appoint counsel and to determine in accordance with the procedures described in section 1170.95, subdivision (c), and *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*) whether Romero-Luna has made a prima facie showing he is entitled to relief.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Romero-Luna's Convictions for Attempted Murder*

Our opinion affirming Romero-Luna's judgment of conviction (with a minor modification in the award of presentence

---

[1]     Statutory references are to this code.

custody credits) describes the evidence presented at his joint trial with codefendant Jesus Augustine Cabrera (*People v. Cabrera* (Sept. 16, 2010, B215543) [nonpub. opn.]).  On the afternoon of November 11, 2006, while Donte Robinson, Rafael McBride and Jason Green were working on a car in the parking lot of an apartment building on Roscoe Boulevard in Canoga Park where Robinson and McBride lived, Robinson saw a man jump the fence and come toward him.  Robinson became concerned and got into his own car, which was parked nearby, and told McBride and Green to get into the car as well.  As Robinson was driving to the parking lot gate, he heard a gunshot.  A man, subsequently identified as Cabrera, was standing there, shooting a revolver at them.

When Robinson drove his car out of the gate, he saw one or two men standing near a red car and other men inside the car.  Gunshots continued as Robinson drove down the alley.  Green turned and saw the red car approaching Robinson's car and a man standing through the red car's sunroof, firing a shotgun at them.  Robinson was eventually able to get away from the red car.  Romero-Luna was identified as the driver of the red car.

The apartment complex where the incident began was located in territory claimed by the Canoga Park Alabama gang, known for its anti-Black sentiments.  Robinson, McBride and Green are Black.  The evidence indicated Romero-Luna and Cabrera were members of, or associated with, the Canoga Park Alabama gang.

The jury convicted Romero-Luna and Cabrera of three counts of attempted willful, deliberate and premediated murder and one count of shooting at an occupied motor vehicle.  The jury also found true the allegations a principal had personally used

3

and intentionally discharged a firearm in the commission of the attempted murders and all the offenses had been committed for the benefit of a criminal street gang. The trial court sentenced Romero-Luna and Cabrera each to aggregate indeterminate state prison terms of 81 years to life.

2. *Romero-Luna's Petition for Resentencing*

On February 22, 2021 Romero-Luna, representing himself, filed a 12-page typewritten petition and declaration for resentencing (plus excerpts from the trial record attached as exhibits), averring he had been convicted of attempted murder, at least in part, on theories of vicarious liability, was factually innocent and could not now be convicted of attempted willful, deliberate and premediated murder because of changes to sections 188 and 189 by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437). Romero-Luna requested appointment of counsel to represent him during the resentencing process.

The superior court summarily denied the petition on March 3, 2021 without appointing counsel or requesting a response to the petition from the prosecutor. In its order denying the petition, the court took judicial notice of records from Romero-Luna's trial, which established he had been convicted of attempted murder, and ruled, "Because the defendant was not convicted of murder, Penal Code section 1170.95 does not apply to him."

## DISCUSSION

Senate Bill 1437 substantially modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843

4

(*Gentile*)) and significantly narrowing the felony-murder exception to the malice requirement for murder. (§§ 188, subd. (a)(3), 189, subd. (e)(3); see *Lewis*, *supra*, 11 Cal.5th at p. 957.) It also authorized, through new section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. (See *Lewis*, at p. 957; *Gentile*, at p. 843.)

There was disagreement among the courts of appeal whether new section 188, subdivision (a)(3)'s prohibition against imputing malice to establish liability for murder other than in specified felony-murder cases also precluded finding a defendant guilty of attempted murder under the natural and probable consequences doctrine. Notwithstanding that conflict, all courts of appeal recognized that, by its express terms, section 1170.95 as enacted by Senate Bill 1437 did not authorize a petition to vacate an attempted murder conviction.

As amended effective January 1, 2022 by Senate Bill 775, however, section 1170.95, subdivision (a), now provides, "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter

conviction vacated and to be resentenced on any remaining counts . . . ."[2]

In his reply brief Romero-Luna argues, with the passage of Senate Bill 775, the order summarily denying his petition for resentencing should be reversed and the cause remanded with directions to the superior court to appoint counsel and to thereafter reconsider his petition consistent with the provisions of section 1170.95 as newly amended.[3]

---

[2] In an uncodified statement of its intent in enacting Senate Bill 775, the Legislature declared the legislation "(a) Clarifies that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories. [¶] (b) Codifies the holdings of People v. Lewis (2021) 11 Cal.5th 952, 961-970, regarding petitioners' right to counsel and the standard for determining the existence of a prima facie case. [¶] (c) Reaffirms that the proper burden of proof at a resentencing hearing under this section is proof beyond a reasonable doubt. [¶] (d) Addresses what evidence a court may consider at a resentencing hearing (clarifying the discussion in People v. Lewis, supra, at pp. 970-972)." (Stats. 2021, ch. 551, § 1.)

[3] In his opening brief Romero-Luna argued the superior court's summary denial of his petition without appointment of counsel violated the plain language of section 1170.95, subdivision (c), as well as his right to due process. He also argued Senate Bill 1437 applied to accomplice liability for attempted murder, not just murder, and the contrary interpretation of the legislation would violate his right to equal protection. The Attorney General in his respondent's brief argued any error in not appointing counsel was harmless because Romero-Luna was ineligible for relief as a matter of law and

6

In a supplemental letter brief filed at the request of this court, the Attorney General urges us to affirm the superior court's order denying Romero-Luna's petition, arguing Romero-Luna remains ineligible for resentencing as a matter of law notwithstanding Senate Bill 775's amendment of section 1170.95 and any errors committed by the superior court, therefore, were necessarily harmless. (See *People v. Mancilla* (2021) 67 Cal.App.5th 854, 859.) In support the Attorney General, citing excerpts from the trial record, states Romero-Luna's jury was not instructed on the natural and probable consequences theory of aiding and abetting for attempted murder. Rather, the Attorney General contends, "the only theory of attempted murder on which the jury was instructed required malice aforethought by appellant personally. [Citation.] The prosecutor relied upon that theory during closing argument."

The incomplete record from Romero-Luna's trial that is part of the record on appeal is not nearly as clear as the Attorney General would have it.[4] Although no instruction on the natural and probable consequences doctrine or felony-murder rule was given, in closing argument, as Romero-Luna (although self-represented) pointed out in his petition, the prosecutor suggested the jury could find Romero-Luna—the driver of the red car, not one of the shooters—guilty of attempted murder based on a theory of vicarious liability (imputed malice). Explaining aiding and abetting, the prosecutor stated: "You have . . . here, multiple

_____

excluding individuals convicted of attempted murder from Senate Bill 1437's ameliorative provisions was constitutional.

[4]     Neither Romero-Luna nor the Attorney General requested that we augment the record on appeal with the full record of Romero-Luna's trial.

parties acting together to commit a crime, instigating, encouraging, helping out. It's a team effort by these gang members to commit a crime. So just some terminology. The principals in the bank robbery situation, the guy who goes in the bank is a principal. The getaway driver is a principal too, aider and abettor. Everybody involved is called a principal. There's your long definition, that persons involved in committing crime are referred to as principals in that crime. Each principal, *regardless of intent or manner of participation is equally guilty*." (Italics added.) To be sure, the prosecutor subsequently stated aiders and abettors "are persons who know the intent—have the intent to commit the crime and intend to help commit the crime," and the trial court instructed pursuant to CALJIC No. 3.01 that an aider and abettor must have acted "with knowledge of the unlawful purpose of the perpetrator." But the prosecutor's inconsistent statements could have been compounded when the court also instructed the jury, using former CALJIC No. 3.00, that "[e]ach principal, regardless of the extent or manner of participation is equally guilty"—an instruction that "could be misleading if the principals in a particular case might be guilty of different crimes and the jury interprets the instruction to preclude such a finding." (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 443; accord, *People v. Amezcua and Flores* (2019) 6 Cal.5th 886, 918.)[5]

---

[5] Additional jury confusion as to the mens rea required to convict Romero-Luna of attempted murder might also have been created by the difference between the modified versions given of CALJIC No. 8.66, defining the elements of attempted murder, and CALCRIM No. 965, defining the elements of shooting at an occupied vehicle. The former instruction explained that, to find the "defendants" (plural) guilty, the People had to prove "one

It may well be that Romero-Luna will be unable to establish a prima facie case for relief when the issue is fully developed in the superior court. But under section 1170.95 as now amended by Senate Bill 775, he is entitled to attempt to make that showing with the assistance of counsel.

## DISPOSITION

The postjudgment order denying Romero-Luna's section 1170.95 petition is reversed. On remand the superior court is to appoint counsel for Romero-Luna, order the prosecutor to file a response to the petition, provide Romero-Luna an opportunity to file a reply and determine whether Romero-Luna has made a prima facie showing that he is entitled to relief in accordance with section 1170.95, subdivision (c), as amended by Senate Bill 775.

PERLUSS, P. J.

We concur:

SEGAL, J.

FEUER, J.

---

person" did a direct but ineffectual act toward killing another human being. In contrast, the latter instruction required, to find "the defendants" guilty, the People had to prove "[t]he defendants willfully and maliciously shot a firearm at an occupied motor vehicle," arguably suggesting the nature of aider and abettor liability was different between the two offenses.

9